"Faith is the strength by which a shattered world shall emerge into the Light"~Helen Keller

[Quoted text hidden]

---

**KEVIN RUNG** <KEVIN.RUNG@eeoc.gov>                     Thu, Mar 26, 2020 at 10:42 AM
To: Rebecca Morgan <ramorgan1@ualr.edu>, "Powell, Brandi (OGC)" <Brandi.Powell2@va.gov>

Good Morning Mrs. Morgan,

Thank you for informing me of the filing of your lawsuit in U.S. District Court. Please advise if you can send me an electronic copy of your petition.

[Quoted text hidden]

---

**Rebecca Morgan** <ramorgan1@ualr.edu>                  Thu, Mar 26, 2020 at 2:49 PM
To: KEVIN RUNG <KEVIN.RUNG@eeoc.gov>

Be glad to.
Rebecca A. Morgan
M.Ed Specialist
Low Vision Therapist for the Blind
M.Ed Curriculum and Instruction
Paralegal

"Faith is the strength by which a shattered world shall emerge into the Light"~Helen Keller

[Quoted text hidden]

From what I am reading I can file a Complaint in U.S. District court without any waiting on any documents from anyone, feel free to correct me if I am wrong, this is the option I wish to exercise for my case. If I am correct, then however long it takes you to draft your decision is of no consequence to me, regarding my immediate ability to file in District Court.

Rebecca A. Morgan
M.Ed Specialist
Low Vision Therapist for the Blind
M.Ed Curriculum and Instruction
Paralegal

"Faith is the strength by which a shattered world shall emerge into the Light"~Helen Keller

[Quoted text hidden]

---

**KEVIN RUNG** <KEVIN.RUNG@eeoc.gov>     Wed, Mar 25, 2020 at 10:34 AM
To: Rebecca Morgan <ramorgan1@ualr.edu>, "Herrin, Mariha" <Mariha.herrin@va.gov>, "zicogizacalazans@gmail.com" <zicogizacalazans@gmail.com>, "Powell, Brandi (OGC)" <Brandi.Powell2@va.gov>

Dear Complainant Morgan,

In response to your inquiry on the time frames, I work on my oldest cases first, and since I have older cases than yours I estimated as best I can when I will be able to write and issue a decision in the subject case.

You can file a civil suit in U.S. District Court now. If you file in U.S. District Court, the subject case before me would be dismissed. However, I can not dismiss the case before me until you actually file a civil suit in U.S. District Court. If you do file in a civil suit in U.S. District Court, please notify me and the agency's representative. You can also withdraw your hearing request and ask for a FAD, and then file a civil suit in U.S. District Court.

[Quoted text hidden]

---

**Rebecca Morgan** <ramorgan1@ualr.edu>     Wed, Mar 25, 2020 at 10:55 AM
To: KEVIN RUNG <KEVIN.RUNG@eeoc.gov>

Cc: "Powell, Brandi (OGC)" <Brandi.Powell2@va.gov>, "Herrin, Mariha" <Mariha.herrin@va.gov>, "zicogizacalazans@gmail.com" <zicogizacalazans@gmail.com>

there is no attachment, please send~
Rebecca A. Morgan
M.Ed Specialist
Low Vision Therapist for the Blind
M.Ed Curriculum and Instruction
Paralegal

"Faith is the strength by which a shattered world shall emerge into the Light"~Helen Keller


On Tue, Mar 24, 2020 at 2:27 PM KEVIN RUNG <KEVIN.RUNG@eeoc.gov> wrote:
[Quoted text hidden]

---

**KEVIN RUNG** <KEVIN.RUNG@eeoc.gov>                         Tue, Mar 24, 2020 at 3:25 PM
To: Rebecca Morgan <ramorgan1@ualr.edu>
Cc: "Powell, Brandi (OGC)" <Brandi.Powell2@va.gov>, "Herrin, Mariha" <Mariha.herrin@va.gov>, "zicogizacalazans@gmail.com" <zicogizacalazans@gmail.com>


Dear Complainant Morgan,


I did not attach anything to the email.


Please clarify your intentions.


Did you want to withdraw your hearing request and ask for a Final Agency Decision (FAD)? If so, I will process that request and send it to the agency office responsible for issuing a FAD as soon as possible. The agency is obligated to issue a FAD within 60 days.


Or did you want to wait for me to draft a Decision approving the agency's Motion for Summary Judgment. It maybe many months before I write the Decision. Generally, speaking it could be 6 to 8 months before I write it.

| | | |
|---|---|---|
| AN | REBECCA MORG | )EEOC NO. 420-2019-00411X |
| | COMPLAINANT | )AGENCY NO. |
| | | )2003-0520-2019100865 |
| | | ) |
| | | ) |
| | VS. | ) |
| ROBERT WILKIE | | ) |
| SECRETARY, | | ) |
| U.S. DEPARTMENT OF VETERAN AFFAIRS,) | | |
| AGENCY | | )DATE: February 16, 2020 |

## COMPLAINANT'S MOTION TO DISMISS AGENCY'S SUMMARY JUDGEMENT

Complainant in the above captioned matter hereby moves to dismiss Agency's Motion For Summary Judgment based on the following:

Undisputed Material Facts:
#3 Complainant, having already undergone such undue duress in simply asking for a reasonable accommodation; a work space with lighting, was already in such fear of retaliation that she filed anonymously.

#4. Reasonable accommodation is available to qualified applicants and employees with disabilities.[5] Reasonable accommodations must be provided to qualified employees regardless of whether they work part- time or full-time, or are considered "probationary."
https://www.eeoc.gov/policy/docs/accommodation.html

#7 Correction-- Lorrie Bowen created a Written Counseling letter, but as Complainant has already pointed out, Ms. Bowen advised that the letter would NOT go into Mitchell's file, nor was it signed or certified by either party. What was Ms. Bowen's objective in addressing Ms. Mitchell's ongoing negative behavior, the same behavior that Complainant repeatedly reported, yet nothing was done to have Ms. Mitchell obey the professional rules of conduct at work (discrimination making certain employees follow unwritten rules of management, while other employees were held to another standard.) With Mitchell this was not only present in unprofessional behavior as Ms. Bowen points out, but was also discovered in CPRS working system, mistakes that Complainant was written up regarding reason(s) for termination, yet Ms. Mitchell had been making a repeated, time sensitive mistake in CPRS for 3-4 years prior.

#8 False-Ms. Bowen was my supervisor, I had no authority to request Ms. Bowen miss a weekly, mandatory staff meeting. Ms. Bowen held me back under false pretenses, and this meeting is exactly where this lamp was erroneously discussed, which led Ms. Bowen to arrive at

Complainant's workspace, unplug the lamp while Complainant was working, using the much needed lamp light to see, and walk away mumbling "I wasn't supposed to assign this to you."

#9 "The duty to provide reasonable accommodation is a fundamental statutory requirement because of the nature of discrimination faced by individuals with disabilities. Although many individuals with disabilities can apply for and perform jobs without any reasonable accommodations, there are workplace barriers that keep others from performing jobs which they could do with some form of accommodation. These barriers may be physical obstacles (such as inaccessible facilities or equipment), or they may be procedures or rules (such as rules concerning when work is performed, when breaks are taken, or how essential or marginal functions are performed). Reasonable accommodation removes workplace barriers for individuals with disabilities."https://www.eeoc.gov/policy/docs/accommodation.html
In the interim, Ms. Gilley should have moved Complainant to a well lit area until these lighting issues were resolved to accommodate everyone. Instead, Ms. Gilley made complainant wait from her October 10, 2018 email and text (previously submitted) and still offered no solution to complainant until the final deadline of November 27, 2018, amounting to 7 weeks that a new hire struggled with no lighting and being offered no equal employment opportunity because of these barriers. Do requests for reasonable accommodation need to be in writing?
No. Requests for reasonable accommodation do not need to be in writing. Individuals may request accommodations in conversation or may use any other mode of communication.[22]

#10 Ms. Bowen was completely aware and even stated "this lamp is a discontinued item", which just happened to be sitting on the floor of her office, when she assigned it to Complainant. Then the meeting Ms. Bowen kept Ms. Morgan from attending was held and the lamp was discussed without Complainant present. After the meeting Ms. Bowen came to complainant's desk and unplugged the lamp, immediately removing it mumbling "I was wrong about giving you this." Not only is Ms. Bowen's behavior unprofessional, to unplug a device that a low vision person is utilizing for their job, is abusive and bullying behavior. Not to mention the OSHA safety issue. As far as Ms. Bowen giving the light back, the Complainant had to ask for it back, however, this story is but ONE of the many that Complainant faced daily on her new job. This rule is this way, no this rule is that way, no we keep the lights off, no we keep the doors closed, no we don't talk about the BRC outside of the BRC. Each of these administrators: Gilley, Burke and Bowen have all testified to "unwritten policy and rules", that a new employee such as complainant would not be able to figure out with so many other differing individuals switching the policies to suit their liking or purpose, and all the while Complainant is just striving to do her job with what few resources she was given.

#11-There was only one light sensitive employee in the work room with Complainant. There were other light sensitive employees who worked in other domains located in an office where the engineers had placed dimmers to accommodate the employees. In the Complainant's room there was Coonce (proclaimed light sensitivity but never wore filters to remediate, as persons with Retinitis Pigmentosa generally do) Complainant has worked in several entities with all levels of blindness and low vision as well as multiple disabilities. Complainant in her 40 year

career experience in the Blind and Low Vision Field has never worked with a light sensitive individual who demanded lights out as their reasonable accommodation, and demanded this for all other workers in the room. One co worker had no light perception (blind), one had the same eye condition as Coonce RP, however, he never complained of light sensitivity and when I asked him he told me he had very little light perception. Two co-workers with no visual impairment at all. So Debra Gilley chose to subject Complainant to the co-workers reasonable accommodation rules and Debra Gilley even violated complainant's ADA rights by choosing the request of (2) workers with no visual impairment (unprotected class). Co- workers don't determine Reasonable Accommodation, Supervisors or LRAC (Karole Jackson) make those legally binding, significant determinations. Debra Gilley violated my ADA rights each time she allowed a co-worker to determine and deny my Reasonable Accommodation. It is interesting to note though that this staff was so determined to keep the rules the way they were accustomed, that the blind co worker stated at the meeting "we never had a problem in here with the lights." And just as I replied to her, the fact that she is calling the lights ``a problem" is an issue right there. My request for lighting was seen as afront, when in reality, I was simply exercising my rights to have a well light area with which to perform my job duties.

#12--yes, after Lorrie Bowen and Debra Gilley had both led Complainant to believe that a lamp and reading stand were being ordered for her after he at length discussion on her reasonable accommodation both speak with and emails of October 10, 2018. After the meeting of October 11, 2018, Debra Gilley and Lorrie Bowen both sat me down, asked me to order what I needed and that is what I did. Never once did Lorrie Bowen tell me that she could not order these items until November 1, nor did she offer any solutions until the lamp and stand arrived. Then and only then, even though I had been asking for in text and emails (already submitted) to be moved to a continually lit area, did Debra Gilley send out the email saying I need to file a formal reasonable accommodation. So, David Burke testifies that employees make their own verbal accommodations and that suffices. Yet, Gilley, Burke and Bowen would like to say that Complainant's repeated verbal request which started upon being hired, were not sufficient. Gilley, Bowen and Burke are falsely stating that my RA never was presented until November 1, 2018. The text and emails previously submitted prove that my need for lighting was being discussed as soon as October 5, 2018. It seems clear this Agency, their Representatives and Administrators, believe that the ADA is theirs to misalign, misconstrue, ignore, implement and design on their own accord, having nothing to do with the legal protections of the ADA for Complainant.

#13--Complainant had verbally, repeatedly requested this 3 weeks prior, and was told by Gilley, Bowen and Burke that the lights "had always been a problem" and that the VA rule is the lights are to be kept on. But they never enforced the VA Policy, OSHA safety rules or the reasonable accommodation request of Complainant.

#14-The ADA determines and states that Reasonable Accommodations are time sensitive, it was not up to the Complainant to stress this, however, all administration would have known immediately Complainant wished to have her RA fulfilled. The ROI and supporting documents

all indicate that the lighting and reasonable accommodation for Complainant was of essence, as it had been discussed for weeks. The lack of lighting and lengthy unnecessary time Complainant had to work with these barriers was well known throughout the BRC. Stating that it is Complainant's fault for not stating time sensitive, puts the onus of responsibility on the disabled employee, when in fact, the responsibility lies with Administration. Using a reasonable personal standard, what would a reasonable person infer if a visually impaired employee came as I did and said " I need to work in continual light." Would a reasonable person think, ok, maybe get that light in a few days or a few weeks or whenever I feel like getting around to it? No, when a person, particularly one that has a visual impairment that necessitates light, request light, it is more than adequate and reasonable to expect that the timing is now. Particularly if you are in a facility where administrators have been educated and trained in the field of blindness and low vision, when you are in a huge government facility (hospital) where do no harm/safety are the very foundations of care. A reasonable person would expect that Administrators would completely comprehend, know and follow the guidelines of the ADA in providing reasonable accommodation. Beside the fact that Ms. Gilley is also asserting in this case that she is experienced with RA for the blind and low vision field.

#15 Why didn't she approve the continually lit work area at the same time? The continually lit work area was more readily available than the reading stand which was ordered from MaxiAids.

#16 Ms. Gilley had to be prompted by Karole Jackson, LRAC, that the deadline was arriving. She clearly wanted to continue to deny Complainant her RA, as she chose to contact someone else in HR as testified by Karole Jackson, LRAC. Ms. Gilley's lack of action on the part of the Complainant and her RA, caused undue stress and unnecessary conflict in the workplace, when it could have easily been remediated, by simply moving Complainant to one of many readily available spaces. There was no legal reason to make Complainant continually wait, to subject Complainant to continued harassment which Gilley was acutely aware of. The notes of Coonce and Bowen submitted in their testimony detail the negative impact this issue of lighting had. They each clearly do not believe that Complainant's RA is viable or warrants any consideration, thus they ignore Complainant's repeated verbal and written RA, denying her an EEO and violating her ADA rights.

#17 These RA's cover a 7 year time span which are not relative to Complainant's employment, but I would like to note, yes, visually impaired people have immediate needs for RA, usually in the form of technology-speech to text on their computer systems (JAWS). Review Agency #14 above and it states "Complainant did not indicate that her RA request was time sensitive." Since the Agency has presented these numbers on Ms. Gilley's experience with RA's, complainant wonders why Gilley would make such a statement, because anyone familiar on any side of an RA knows that expediency is the rule. Why does the EEO and the ADA say employers should act expediently? So that a disabled worker has the full EEO available and the legally protected rights and resources to be successful at their position. If Ms. Gilley is so familiar with RA, she should have been acutely aware that her continual delaying and discrimination against Complainant's ongoing verbal and written RA's were violations.

Complainant has proven prima facia discrimination: disability was obvious, disability was discussed, employer was continually made aware of the undue barriers and hardships of being denied a continually lit area, Complainant repeatedly brought up safety concerns to Bowen and Gilley, only to be continually ignored and have an employee with light sensitivity and their spoken rule for lights out prevail each day of Complainant's new job amounting to 7 weeks. Additionally, Lorrie Bowen's written and previously submitted ROC, a report of disciplinary conduct, that was never presented to complainant, first knowledge of in the ROI, Ms. Bowen comments that "Rebecca smirking." This is deliberate abuse and bullying of someone with a known disability, facial disfigurement, Ms. Bowen was acutely aware of Complainant's facial disfigurement, yet she made a derogatory comment about this very disfigurement in a disciplinary note. Ms. Bowen is crossing professional lines and rendering punitive, de-basing and damaging comments based on Complainant's disability

A. Claims based on disability--"in fact timely granted" False, neither weeks of verbal request for RA (Burke testified verbal ra's are modus operandi at BRC), nor being forced to file a formal RA for lighting were fulfilled. Gilley waited until the last moment of the last hour and still tried NOT to grant Complainant's RA. Gilley told Karole Jackson that moving Complainant would hinder "work flow" as Ms. Jackson informed her, that is not an acceptable reason. Debra Gilley and Lorrie Bowen continually told Complainant how inconvenient it would be to move her, which one quick glance of the BRC floor plan will prove that I was moved 2 doors down the same hallway. Now the Agency is stating they had reasons "not to provide RA/workstation". (IV.Argument, this document) Complainant respectfully request those reasons in writing so that she can submit them to the ADA. Just as Ms. Coonce argument that Complainant did not ask "the right way" for the lights to be turned on, the ADA laws are clear, the burden is not on the disabled individual to ask a certain way, a certain time, to wait for the business to be able to accommodate them. Those are not legitimate reasons for the Complainant nor the ADA, and this Agency has tried to blame the Complainant for not having enough medical documentation on an "obvious disability", then the Agency said it would be inconvenient to move Complainant, then the Agency said Complainant didn't specify a time for being moved, (the ADA says immediately)and now the Agency is stating there were legitimate reasons not to provide a permanent work station and to terminate the Complainant. (p.8. Of Powell Motion). The legitimate reasons will need to be reported to the ADA, but it appears in Agency Representative making this comment that these go hand in hand, there was never a plan to honor my RA, rather, terminating me was their solution. You can't create a work barrier, deprive someone of an EEO, force them to sit in the dark, force a disabled person to apologize to an entire staff for asking for lights to be turned on (extreme undue duress, attack of person, bullying, harassment, hostile). Why was I as the new hire, who needs light to see admonished and made to apologize for "asking the wrong way?' It seems to me in these most recent documents the Agency is trying to admit zero responsibility for any of the hostile, unwelcome treatment I endured. This Agency further seems to feel free to twist and wrangle the ADA to suit their

needs--allowing employees to determine RA for co-workers, blaming the Complainant for not submitting enough medical, blaming the Complainant for not specifying a time frame to be moved, when the laws that govern these issues are clearly found https://www.eeoc.gov/policy/docs/accommodation.html

**B. Elements and burden of proof for hostile work environment claims:**
Reasonable person would expect lighting, a reasonable person would expect that if they requested lighting, it would be granted immediately. What reasonable person would agree to working in a dark room with doors closed? What reasonable person would have the expectation that this would not only be required, but once the reasonable person stated they could not perform in this environment, the other reasonable people around them, would consider needing lighting a reasonable request and honor it. Furthermore, a reasonable person who has a visual impairment and a lifetime experience of career, volunteerism and advocacy who enters into a working position with other visually impaired and or/other disabilities has the reasonable expectation that ALL persons, all workers needs, rights and EEO will be what they will receive at a professional, government agency. In my experience with the BRC and the re-telling of how I was treated there, I have yet to find one reasonable person who considers what I endured during my employment there, anything resembling reasonable. Pg. 9 of Agency's MSJ-"even assuming the alleged events occured..." It is severe and pervasive to walk up behind a visually impaired person, who is working at their desk, and unplug their lamp, take it away with no warning, and mumble "I made a mistake giving you this." What sort of professional supervisor approaches an employee, TRYING to do their work, an employee who has been pleading for a light source, to be given light, only to have their Direct Line Supervisor unplug it and walk away with no explanation. "In order for a place of employment to become a hostile work environment, there needs to be pervasive and continuing behavior and/or policies that impedes someone's ability to perform their job because of the level of hostility and discomfort." https://www.eeoc.gov/laws/types/harassment.cfm Agency's claim that they "dealt with Ms. Mitchell's actions appropriately", I deduce from this comment that the Agency finds it appropriate to write up certain employees calling them out on their lack of professionalism and their hostile treatment of other workers since that letter never made it to the employees file, there were ZERO ramifications for Mitchell's behavior, and as Bowen states in her "counseling letter" that this behavior is ongoing and routine for Ms. Mitchell. Yet a new employee at the VA can expect to be denied their legal, ADA rights, be forced to work in the dark with hostile people who think they are above the laws of the ADA, and that if you don't ask "the right way to turn on the lights" too bad. Neither the ADA or OSHA would agree with the manner in which Administration allowed the employees to design the ADA.

**D. Elements and Burden of Proof for Reprisal Claims :** ROC's submitted by Lorrie Bowen express how unwelcome she found Complainant's request for her RA to be fulfilled. There are no written unsatisfactory marks ever presented to Complainant during her 90 day period, there is no evidence of this "investigation" Gilley and Bowen conducted with staff, excluding Complainant. In undisputed Material Facts, Agency presents #3--"Complainant contacted an EEO Counselor.... And the Agency was notified December 12, 2018." As HR explained to me

"the bar is very low for the Chief, she came over and launched a litany of Verbal complaints about you (R. Morgan) and wanted you terminated." I would like sworn testimony as to what date that occured.

**IV. Argument**–Complainant wishes to have in writing and detail the legitimate reasons "not to provide a permanent work station." Complainant also request in writing, in depth, to the detail, everything that Complainant did that warranted her wrongful termination.
Respectfully Submitted,

_Rebecca Morgan_
Rebecca Morgan

### CERTIFICATE OF SERVICE

I hereby certify that I delivered this motion by via email to:

Kevin.Rung@eeoc.gov

Brandi.Powell2@va.gov

Complainant Rebecca Morgan By
email only: ramorgan1@ualr.edu

Complainant's Representatives Margaret Calazans Martha Herrin By
email only: zicogizacalazans@gmail.com and mariha.herrin@va.gov

February 16, 2020    REBECCA MORGAN

### CERTIFICATE OF SERVICE

I certify that on February 16, 2020, I sent the foregoing Motion and proposed Order via e-mail mail to the following individuals or contacts, as indicated below:

Agency's Representative Brandi M.
Powell 2400 Canal Street New Orleans,
Louisiana 70119 By email only: By

email only: Brandi.Powell2@va.gov

Complainant

Rebecca Morgan

By email only: ramorgan1@ualr.edu

Complainant's Representatives Margaret Calazans Martha Herrin By email only: zicogizacalazans@gmail.com and mariha.herrin@va.gov

                                              Rebecca Morgan

```
REBECCA MORGAN                        )EEOC NO. 420-2019-00411X
        COMPLAINANT                   )AGENCY NO.
                                      )2003-0520-2019100865
                                      )
                                      )
        VS.                           )
ROBERT WILKIE                         )
SECRETARY,                            )
U.S. DEPARTMENT OF VETERAN AFFAIRS,)
        AGENCY                        )DATE: March 23, 2020
```

## Complainant's Claims of Monetary Damages and Settlement Request

Comes now the Complainant and presents medical records, diagnosis, treatment which was submitted December 2019. At this juncture Complainant requests same as stated below. Further reasoning as to ongoing deteriorating health. Complainant maintains that text to Debra Gilley will evidence she informed her that "stress of the nature she was subjected to, has adverse affects on her disability." Complainant has never needed support crutches to walk, nor has her vision loss occured so rapidly. Medical records will estabilish Complainant was hired with 20/40 vision but due to being forced to work in the dark and all the extraneous, ongoing stress, within months of wrongful termination her vision status is legally blind, with evidence of inner occular pressure and astigmatism, none of which have any previous diagnosis or medically noted. Complainant now walks with a cane or arm braces, has heart problems which were not present before reporting to work at BRC October 1, 2018, severe memory and concentration issues. Complainant maintains that upon reporting to work she was a vibrant, enthusiastic, healthy individual. The combination of anxiety, stress from co-workers, stress of sitting in the dark, discouragement from being surrounded by hostile co-workers have had major impact on her deteriorating health. Complainant has never been terminated, nor treated in the unprofessional and insensitive manner in which she was treated by DG, LB, DB, C. Coonce, D. Benjamin, S. Mitchell, L. Dickerson, B. Hales, her administrators and co-workers in the dark work room I was forced to work in. There is much more medical intervention that Complainant is currently enduring and will continue in the future. For these reasons, Complainant does not find her settlement request unreasonable or over estimated. To add insult to their injurous treatment of Complainant are the sworn testimonies of these administrators and co-workers who continually lament that "complainant was a not a team player" because she simply wanted to be able to see in her work environment. Karole Jackson, LRAC who is not a professional in the low vision field as these Administrators are trained to be, testifies truthfully, that my visual impairment was obvious, that it would be difficult for an employee to succeed in the dark, that keeping Complainant in the dark room where everyone preprosterously had animosity towards her for not

asking the right way to turn on the lights would create an uncomfortable situation for me. Uncomfortable that became almost unbearable, to the degree that Complainant's attending physician, Dr. Mikail Magdy, asked her if she wanted to go to hospital for a few days. For these administrators to testify that there were windows, it was never "dark", Complainant was the only one who objected, Complainant didn't object, truly the way in which Debra Gilley, David Burke and Lorrie Bowen contradict themselves in their individual testimonies is glaringly obvious that they are seeking to absolve themselves of any responsibility for the damages they caused Complainant. Agency Counsel Powell has also reinforced this, accusing Complainant of not havingenough medical documentation", "no diagnosis", "didn't state a specific timeline as to when she needed light". Any reasonable person would know immediately that if a person says they need light, it means they need it right now. Trying to blame Complainant for their overt and continual ignoring of the ADA laws, speaks to their disparaging treatment. When I reported them to Ms. Jackson, I remember saying, Debra Gilley is NOT going to be happy about me coming and filing my RA. As Ms. Jackson stated, this is the law Ms. Morgan, this isn't a request, this is the law, that protects you and your disability. But for Ms. Jackson's support and Mariha Herrin, my Union Representative, I was left to defend myself of these continual onslaughts. The ADA is a powerful piece of legislation, however, ensuring that those protected are successful in making sure their rights are upheld is a much more difficult matter. For example, Complainant as the disabled, wrongfully terminated employee is charged with legally defending herself against a huge, Federal Agency. As your Honor pointed out, depositions are expensive, legal support is not built into the ADA for the protected classes. I accept the further encumbrance of attempting to hold those that abuse the ADA in my case by highlighting the false testimony they gave, while supporting these falsehoods with the emails, text and documents I have submitted. I sincerely hope at hearing that these same Administrators do not maintain that they only knew of my visual impairment in November, when evidence shows that is clearly false. I hope that the Judge sees clearly that a new employee would have no prior knowledge of the many "unwritten BRC policies that we have engaged in for years," the allowing of the ADA to be violated, treating it as if it is a popularity contest or a majority rule concept instead of the law that it is, is reckless not just for disabled Complainant but for any and all protected classes. For Ms. Gilley to testify that she is well knowledged and exercised the elements of RA a dozen times, calls into the question of further discrimination that Complainant is asserting. That at the last moment after speaking with LRAC, Karole Jackson, Ms. Gilley needed to consult Agency Counsel, proves that she had no issue with approving 12 prior RA's, but she clearly had a problem with Complainants, as her oblivion to my rights continued for 7 weeks, giving zero consideration to the damage that was being caused to Complainant's vision, needlessly exacerbating her anxiety and causing full blown major medical problems that have been and ongoing treatment by professionals in neurology, cardiology, orthopedics, psychology and opthalmology. Ms. Gilley did not want to approve my RA, she wanted to get rid of me, wrongful termination, out of retaliation simply because I engaged in my EEO and filed my RA. And

although it may be hard to comprehend, the mantra, "What happens in the BRC, stays in the BRC." is what most offended Ms. Gilley and her unwritten policies. I stepped out of the BRC and asserted my rights, amidst daily retaliation, hostility and negative portrayal of an employee who has never experienced such intentional wrongdoing in her entire professional career. The NEO that the VA offers to new hires was not present in my job placement and in the testimony of L. Bowen we see this is evidenced, using doodling as a reason for firing a qualified, disabled employee in a government entity that is continually on the news as having massive employee shortages, that is charged with helping and healing America's Veterans, is unacceptable. Complainant has absolutely no reason to fabricate or be disingenious in her own accounting of these daily onslaughts of disparate treatment and prima facie discrimination. In my own self advocacy I have learned much about the legal challenges to protect one's ADA rights. Having been an activist, raised by a blind, entreprenurial activist, I know I will take this experience and utilize the difficulty along with the strength to see it through with my fellow disabled citizens. I thank your Honor for granting me your valuable time to listen to my case.

## Pecuniary damages

| | |
|---|---|
| Lost Wages--remainder of 2019 | $40,000 |
| Lost Benefits, Medical, 401K 2019 | 12,000 |
| Lost wages 2020 | 54,091 |
| Lost Benefits, Medical, 401K 2020 | 12,000 |
| Attorney's Fees, documents, paralegal work Product | 3,000 |
| Medical 2018/19 doctors, medicines | 5,000 |
| Future medical | 28,000 |
| Subtotal | $142,091 |

## Non Pecuniary Damages (mental and emotional damage)

**During the entire 90 day probationary period of work, current and ongoing:**
7 weeks of working in dark, hostile environment
Trauma, depression, worsening health, humiliation
Strain on family, loved ones, grief of professional
mischaracterization, loss of opportunity for 2nd

Certification.Mental anguish, pain, suffering,
Loss of career opportunities and enjoyment
Derogatory comments by Lorrie Bowen in ROC
About Complainant's facial paralysis

|  |  |  |
|---|---|---|
|  |  | $101,500 |
|  | Plus | $142,091 |
|  | **Grand Total** | **$ 243,591** |

**Request for work consideration:**

Due to the incidents that occurred in my employment at the BRC, my disabilities were increasingly aggravated, impairing me to the degree of applying for SSDI, January 2019, being approved for SSDI April 2019. Complainant continually sought work, requested job reassignment through HR at Biloxi VA and New Orleans VA, to no avail, and Complainant is now requesting to be re-assigned. Complainant has relocated to Oxford, MS to be near family There is a Veteran's Home here and I would greatly appreciate being given a position there, with full protection and accommodation as is legally mandated, as I sincerely miss working with our Veterans. I can conference with my Job accommodation specialist to see if there are any modification/changes/restrictions due to the worsening health I continually experience as an ongoing complication resulting from my employment at the BRC.

Request to be reinstated for sick leave & accured annual leave.

\*\*Due to COVID 19-Complainant had (2) major Dr. Appointments cancelled by providers: Cardiologist Little-March 17, 2020, Neurologist Edwards March 23, 2020. Complainant was in Baptist ER 3/15/2020-virus/anxiety--COVID ruled out, placed on quarantine-Complainant is in sucseptible group. Complainant further reiterates, heart and nuerological problems were NOT complications present in medical exams prior to hire date at BRC October, 2018.

### CERTIFICATE OF SERVICE

I hereby certify that I delivered this motion by via email to:

Kevin.Rung@eeoc.gov

Brandi.Powell2@va.gov

Complainant Rebecca Morgan By

email only: ramorgan1@ualr.edu

Complainant's Representatives Margaret Calazans Martha Herrin By email only: zicogizacalazans@gmail.com and mariha.herrin@va.gov

March 23, 2020    REBECCA MORGAN

## CERTIFICATE OF SERVICE

I certify that on March 16, 2020, I sent the foregoing Motion and proposed Order via e-mail mail to the following individuals or contacts, as indicated below:

Agency's Representative Brandi M. Powell 2400 Canal Street New Orleans, Louisiana 70119 By email only:

Rebecca A. Morgan