RECEIVED
AUG 14 2020
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

REBECCA ANN MORGAN          PLAINTIFF
VS.          CIVIL ACTION: 3:20-cv-00109-GHD-JMV
ROBERT WILKIE
SECRETARY U.S. DEPARTMENT OF
VETERANS AFFAIRS          DEFENDANT

## PLAINTIFF'S RESPONSE AND MOTION TO DISMISS DEFENDANT'S RESPONSE IN OPPOSITION TO AMEND COMPLAINT [ECF nos. 17 and 24]

**COMES NOW,** pro se litigant, Rebecca A. Morgan to state reasons and request the court should allow Motions [ECF Nos. 17 & 24] based on the below stated:

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Conley v. Gibson, 335 U.S. 41, 48 (1957) (emphasis added); see also Fed. R. Civ. P. 12(b)(6); Bell Atlantic Corp v. Twombly, 550 U.S. 540, 570 (2007). A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 556-57. A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. In cases such as this, where ADA violations are evident on their face (prima facie), where continual abuses are easily verifiable and where a disabled litigant is attempting to secure their protected ADA rights, the Plaintiff asks the court to liberally construe her complaint. Given that Plaintiff was granted an initial investigation by the ORM, had Plaintiff not had enough evidence to be granted an investigation, this case would have been halted and never gone through the ORM process. In other words, Plaintiff had to establish and prove that there was enough evidence for the ORM to launch an investigation of Plaintiff's complaints which she successfully accomplished.

Consideration of the Complaint as a whole demonstrates that it meets the requirements established under the Federal Rules. "[A] complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556). Here, the Complaint presents a detailed recitation of Plaintiff's assertions which can be easily proven in the sworn testimony of the 3 administrators, Gilley, Burke and Bowen. It is evident that they contradict one another regarding the rules, unspoken policies, and administration of reasonable accommodation granted by employees to other co-workers, specifically Plaintiff. These are all solid examples of ADA violations, which stand alone without Plaintiff testimony to the facts. Gilley, Burke and Bowen repeatedly admit that the lights were kept off, the doors were kept closed, they were discussing Plaintiff's disability and reasonable accommodation with fellow co-workers. Nothing was ever discussed to accommodate Plaintiff, a new hire, merely seeking an EEO and requesting to be moved to a safe, continually lit area. LRAC for Biloxi VA testifies that Gilley's answer to moving Plaintiff to a continually lit area was not an acceptable response. Jackson further testifies that all employees are entitled to light, that without light Plaintiff would not have had any EEO and that it would be reasonable to assume that hostility existed in the work room because Plaintiff kept asserting her ADA rights. A review of the entire defendant's sworn testimony demonstrates that the Plaintiff in no way relies upon mere legal conclusions but rather additionally contains a detailed factual account of Defendant's abusive practices which establish their liability for the violations of the ADA, OSHA and VA safety laws.

***Futile: adj. 1 having no effective result; unsuccessful. 2 pointless; unimportant; trifling***  Nothing could be further from the truth for the (3) AAG's to claim that Plaintiff's proposed amendments are futile. Futile is an unsupported reason to further bar Plaintiff from seeking justice that is promised for her protected class as a disabled American through the Rehabilitation Act and the ADA. However, being a marginalized disabled citizen, it is of no surprise that those who are tasked with delivering justice might intrinsically perceive that it is indeed a futile, if not impossible endeavor for a pro se disabled litigant to prevail while trying to protect their legal rights. With the odds stacked so disproportionately against me what chance does a disabled pro se litigant have against 3 AAG's? Having worked with the disabled over 30 years, having a lifetime experience with an exceptionally accomplished blind father and being a disable citizen myself, I can only reiterate that this litigation is but one of many barriers heaped upon disabled and marginalized citizens in the U.S. even as we so proudly recently celebrated the 30th Anniversary of the Rehabilitation Act and the promises of that landmark, sweeping legislation. Disabled people in general do not have the luxury of contemplating the impossible or the futility of existing among their abled peers. As a disabled citizen I cannot just "allow" the administrators at the VA who abused my rights to do so without raising my voice and my self advocacy by saying this is wrong this is what happened and this needs to be investigated and remedied. No disabled person should have to endure what I endured while working at an U.S. Federal Agency. Disabled people have risen and will continue to rise against barriers, blocks, injustice and inequality with every fiber in their being. A lack of self advocacy, feeling defeated

or as if one has no voice are much larger obstacles than any disability could ever contain. There is absolutely nothing futile in asserting one's legal rights and holding those who abuse those rights accountable.

Plaintiff denies AAG Jackson's statement (Paragraph# 1) "seeks a leave of court to file a second lawsuit in…" Plaintiff is not seeking to file a second lawsuit, Plaintiff is simply following the instructions as the AAG instructed her that she must be in the district court where the events occurred.[ECF #14] Which would be the USDC for the Southern District, as opposed to the USDC in the Northern District. Plaintiff has already explained why she mistakenly chose the Northern District and has also reported speaking to the Clerk in the Southern District and was informed that "normally the courts will just transfer the case." Plaintiff raised the question as to why in her particular case this was not true. Plaintiff questions where there is a legitimate, legal reason for the court not to transfer the case, reasons of material fact, not of technicality.

Paragraph #2- Plaintiff agrees- "when justice so requires". Justice is required in this matter. Testimony and evidence clearly prove that ADA violations, hostile work environment, disparaging treatment which resulted in further disability to Plaintiff occurred. These incidents all occurred at one of the leading Federal Agencies in the United States. An agency where all employees are trained on the rights protected by the ADA, where OSHA safety laws are to be enforced, where employee orientation reiterates time and again the rights of others. Yet selectively, these Federal Administrators made a continual conscious choice to violate Plaintiff's rights, create undue harm and treat her with hostility depriving her every day of her EEO. Furthermore it is false to state that Plaintiff has bad faith or dilatory motives, or that she has undue prejudice. Plaintiff is seeking to enforce her legally binding ADA rights, Plaintiff is seeking to hold those accountable who denied and violated those rights. As far as undue delay, there is no one more continually harmed by this treatment than Plaintiff. To have endured the time consuming and laborious ORM investigative process, to have gone through the EEO process and to now be in Federal Court, there is no one more eager to end this ongoing abuse of administrative power and inequity. It has been over 1.5 years since Plaintiff was wrongfully terminated, Plaintiff has presented settlement offers on numerous occasions. Plaintiff still is the only party to this matter whose life has been negatively impacted, while these Administrators carry on without one consequence of how they violated a disabled employee's rights and while they are defended with all manner of Agency (tax payer) counsel. Plaintiff is a pro se disabled litigant seeking what any reasonable person would deem is proper. No one should have to work under the duress and conditions that Plaintiff did while employed anywhere, much less a massive U.S. Federal Agency.

Paragraph #3- "even if true" Plaintiff asserts the allegations are true, there is no "IF" and there is no deficiency to be exposed. Plaintiff has previously addressed the evidence in Gilley,

Burke and Bowen's testimony. There is no doubt the lights were kept off, there is no doubt Plaintiff was repeatedly denied reasonable accommodation for 7 weeks. There is no doubt that Plaintiff was disparaged continually, the documents submitted by Bowen and Coonce both attest to Plaintiff's need for light, yet their refusal to grant such. Evidence proves there were (2) co-workers with no disability within the work room, yet their request to keep the lights off and doors shut was granted, even though they are not in a protected class. Bowen further disparages disabled Plaintiff by writing a report of conduct stating "Rebecca smirked" Bowen full well knew that Plaintiff has a facial deformity, to write someone up due to their disability is deeply disturbing, unprofessional and certainly not how I imagine Secretary Wilkie believes his employees are conducting themselves on the job. The court only has to read the testimony to unequivocally determine the defendant's are liable as the Plaintiff states in her complaint.

    Paragraph #4- Plaintiff denies trying to file a second lawsuit, plaintiff is simply trying to move her current lawsuit to the proper court as advised by AAG Jackson.[ECF #14] Plaintiff did not fail to file her lawsuit in the timeframe or administratively exhaust her claim. Plaintiff took the guidance of VA procedures as instructed and filed when and where applicable at all times. Plaintiff submits with this motion *Scheduling Notice and Order from ALJ Kevin Rung*. This is to clarify for the (3) AAG's that Plaintiff is within her timeline. And although this does create a burden for Plaintiff since she does not have a home office and since she is aware that the (3) AAG's could easily get this internal document, if they have not already, Plaintiff is highly motivated to submit this document to clarify and settle this false accusation. Opportunities to name proper defendant, Plaintiff relies on the legal doctrine of Respondeat Superior with regard to Robert Wilkie, Secretary of U.S. Veteran's Affairs and reiterates in response to Defendant's [ECF #14] it is more than implied that Administrators Gilley, Burke and Bowen place their actionable misconduct on Wilkie because they are his subordinates who ultimately answer to him within the Agency. What is questionable is the furthering of the inequitable context of this case whereby you have (3) AAG's and one disabled defendant and the AAG's want to further bar the Plaintiff from naming Wilkie and filing her complaint.

    Paragraph #5- Already responded in Defendants [ECF #14] that Counsel Powell for the Agency prepared the legal documents, giving them the heading with Wilkie as defendant. Not being an attorney, Plaintiff would have no legal expertise to realize that this was an unintended error. The AAG's go on to elaborate on Plaintiff's deficiencies and failures. Plaintiff can only wonder if they have any knowledge of the negative impact of such accusations, whether in the legal domain or not. These comments are similarly parallel to the Administrators at the VA who testify that Plaintiff doodled on paper,, medical documents didn't give enough information, Plaintiff didn't say when she needed light, Rebecca smirked, Rebecca turned the light on without asking permission. Disparaging treatment and words that have no basis in fact, all they serve to do is continually ignore the real abuses and laws that were intentionally and repeatedly violated

and erroneously place blame on the Plaintiff in this complaint. And while it is true disabled people want equality, there is nothing equitable about how the DOJ or the VA have treated this case.

     **PLAINTIFF** prays the court will move to dismiss the Defendant's Opposition to Motion to Amend and allow Plaintiff to move forward in the trial court with her case or speedily resolve this case via settlement negotiations.

> Respectfully Submitted,
> Rebecca A. Morgan
> Pro Se Litigant
> *(signed)*

## **CERTIFICATE OF SERVICE**

     I, Rebecca A. Morgan, Pro Se Litigant certify that I hand carried (2) copies of this Planitiff's Response and Motion to Dismiss Defendant's Opposition to Motion to Amend in this matter to:

     Magistrate Jane Virden
     USDC For the Northern District
     Clerk David Crews
     911 Jackson Avenue
     Oxford, MS 38655

This the 14th day of August 2020.

                                                Rebecca A. Morgan
                                               Pro Se Litigant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New Orleans Field Office

Hale Boggs Federal Building
500 Poydras Street, Room 809
New Orleans, LA 70130
(504) 635-2579
TTY (504) 595-2958
FAX (504) 595-2884
1-800-669-4000

*Rury dato*

| | |
|---|---|
| REBECCA MORGAN,<br>            COMPLAINANT<br><br>VS.<br><br>ROBERT WILKIE,<br>SECRETARY,<br>U.S. DEPARTMENT OF VETERANS AFFAIRS,<br>            AGENCY | ) EEOC NO.   420-2019-00411X<br>) AGENCY NO. 2003-0520-2019100865<br>)<br>)<br>)<br>)<br>)<br>)<br>) DATE: NOVEMBER 18, 2019<br>) |

## SCHEDULING NOTICE & ORDER

In the event that a hearing is held for the captioned matter, it will take place as follows:

Hearing date:    May 6 and 7, 2019

Hearing time:    08:30 AM CST

Hearing location: via Video Telephone Conference (VTC) between the agency's facility in Gulfport, Mississippi and the agency's facility in New Orleans, Louisiana.

### PRE-HEARING CONFERENCE SCHEDULE

Additionally, I am scheduling a pre-hearing telephone conference to discuss settlement, define the issues to be adjudicated, and review hearing procedures. The telephone conference shall be held as follows:

Pre-hearing Conference Date:    April 1, 2020

Pre-hearing Conference Time:    09:30 AM CST

The Agency representative shall initiate the conference call by telephoning me at the number below and telephoning Complainant at the number he/she designates. Since one purpose of the pre-hearing conference is to explore a possible settlement of this case, please ensure that your representative, if any, has settlement authority. I expect the parties and representatives to be prepared to discuss settlement options in concrete detail.

1

## DEADLINES

| | |
|---|---|
| Discovery must start: | ~~February 2, 2020.~~ December 2019 Any party who does commence discovery timely is deemed to have waived the right to pursue discovery. Discovery is limited to the terms discussed below. |
| Depositions must be taken no later than: | January 3, 2020 |
| Discovery must end or closes: | January 17, 2020 |
| ✓ Deadline, motion for summary judgment or decision without hearing: | •February 3, 2020 |
| Deadline, summary judgment or decision without a hearing motion opposition: | 15 days after motion e filing/service or February 18, 2020 if motion e-filed or served on February 3, 2020 |
| Deadline, summary judgment motion reply, if any: | ✓ 5 business days after opposition e-filing/service or February 25, 2020, if opposition e-filed /served on February 3, 2019 |

## DISCOVERY

Under the Commission's regulations, Administrative Judges are granted broad discretion in the conduct of administrative hearings. 29 C.F.R. 1614.109; see, e.g., *Malley v. Dept. of the Navy*, EEOC Appeal No. 01951503 (May 22, 1997). The purpose of discovery is to enable a party to obtain relevant information for preparation of the party's case. Both parties are entitled to reasonable development of evidence on issues raised in the complaint, and the Administrative Judge may limit the quantity and timing of discovery. See MD-110, Chapter 7, Section IV(A)(1). It is anticipated that discovery will ordinarily involve supplementing the existing record. There may be situations in which the record does not have to be supplemented. See MD-110, Chapter 7, Section IV(B)(2).

While the parties have the right to seek discovery prior to the hearing in accordance with 29 C.F.R. § 1614.109(d), they must comply with this Order and all other orders issued by the Judge that pertain to record development and should only seek relevant information through

2